**UNITED STATES of America, Appellee,**

v.

**Dale Ray HALEY, Appellant.**

**No. 71–1192.**

United States Court of Appeals, Eighth Circuit.

Nov. 15, 1971.

Certiorari Denied March 6, 1972.
See 92 S.Ct. 1205.

See also 8 Cir., 444 F.2d 61.

---

Paul E. Watts, Omaha, Neb., for appellant.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

Before JOHNSEN, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

Defendant Dale Ray Haley was convicted in the United States District Court for the Southern District of Iowa on two counts under 26 U.S.C. § 4704(a),[1] dispensing and distributing heroin not in or from the original stamped package; and on two counts under § 4705(a),[2] selling heroin not pursuant to a written order. He appeals his judgment of conviction.[3] He asserts as error: (1) the jury's acquittal of defendant on the counts charged under § 174[4] removed jurisdiction to prosecute for the illegal sales since the acquittal established that the defendant had no knowledge of the heroin's illegal importation; (2) there was undisputed evidence that defendant was simply a procuring agent for the government; (3) the court's instructions on entrapment were erroneous; (4) the defendant was placed in double jeopardy as to the substantive offenses of this action since they constituted the same overt acts as those charged in an earlier conspiracy conviction in Minnesota; and (5) the prosecutor made unfair comments in his summation to the jury.

## I. LACK OF KNOWLEDGE AND EVIDENCE OF ILLEGAL IMPORTATION

Defendant was acquitted of counts charging violation of § 174 for receiving, concealing and facilitating the transportation of heroin. This particular statute supports the permissible inference that heroin in the United States has been illegally imported, and a defendant who possesses it is charged with the knowledge that this is so. This statutory inference has been constitutionally upheld. Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). During the course of defendant's trial the government's chemist admitted that the heroin may have been

---

1. Section 4704(a):
    "It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

2. Section 4705(a):
    "It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

3. Defendant was sentenced to imprisonment for five years under § 4704(a) and for fifteen years under § 4705(a), each to run concurrently and concurrently with the twenty year sentence imposed on a conspiracy count conviction for violating these same sections arising in the cause tried in Minneapolis, Minnesota. This conviction was affirmed in United States v. Haley et al., 452 F.2d 391 decided this date.

4. Title 21 U.S.C. § 174:
    "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237 (c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.
    "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

synthetically produced in this country. But see 396 U.S. at 409–410, 90 S.Ct. 642. Defendant's argument is that the verdict of acquittal under § 174 destroys the jurisdictional bases for conviction under §§ 4704(a) and 4705(a).

■ The acquittal on the two counts under § 174 may well have represented a compromise by the jury. See, United States v. Porter, 441 F.2d 1204 (8 Cir. 1971); Koolish v. United States, 340 F. 2d 513 (8 Cir. 1965), cert. denied 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724. We refuse to speculate as to the basis for the jury verdict. Even assuming for the sake of argument, however, that the jury concluded defendant did not have knowledge of any illegal importation, this contention does not undercut the convictions under §§ 4704(a) and 4705(a). Violation of §§ 4704(a) and 4705(a) does not depend on the illegality of the importation. Cf. 396 U.S. at 420–421, 90 S.Ct. 642. These sections do not rest their jurisdictional bases on congressional regulation over imports, rather the authority to regulate is through Congress' power to "lay and collect taxes." U.S.Const. art. I, § 8; United States v. Doremus, 249 U.S. 86, 39 S. Ct. 214, 63 L.Ed. 493 (1919). In the instant case the defendant was charged with "selling and distributing" the heroin from an unstamped package. The government does not rely upon any assumptions of proof. Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L. Ed.2d 597 (1959); cf. Turner v. United States, supra, 396 U.S. at 421, 90 S.Ct. 642; Yearwood v. United States, 294 F. Supp. 748, 749 (S.D.N.Y.1969). Direct testimony showed that defendant was dispensing and distributing heroin from an unstamped package. Testimony likewise established that defendant sold heroin without a written order. Therefore, even absolute proof that defendant had no knowledge of the illegal importation would not defeat his convictions under §§ 4704(a) and 4705(a).

## II. "PROCURING AGENT" DEFENSE

The defendant testified that he obtained the heroin only because he was induced to do so by the government's informer. He related that the informant told him that he would be killed by a person known as "Fast Eddy" if he did not produce some drugs. "Fast Eddy" was shown to be an undercover government agent, too. This testimony concerning the threat was denied by the government. Defendant's claim is that he personally received no money on the exchange. He asserts that he was entitled to a directed verdict of acquittal since the evidence was not contradicted that he was a procuring agent.

■ The defendant requested an instruction regarding the procuring agent defense based on Lewis v. United States, 119 U.S.App.D.C. 145, 337 F.2d 541 (1964), cert. denied 381 U.S. 920. The court gave the instruction. We find no error in submitting this issue to the jury. See United States v. Shoemaker, 429 F.2d 530 (8 Cir. 1970). There existed substantial proof from which a jury could find that Haley was not simply a procuring agent. The defendant paid a third party for arranging the September 15, 1970, meeting with undercover agent James McDowell in order to make the sale. The defendant gave McDowell a phone number where he could be reached for future purchases. The defendant made a later sale on October 14, 1970, without any intermediary, and the price of that sale was negotiated between the government agent and the defendant.

## III. ENTRAPMENT INSTRUCTION

The entrapment instruction given by the court is set out in the margin.[5] The

5. "The defendant asserts that he was a victim of entrapment as to the crime charged in the Indictment.
  "Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

defendant requested an instruction which also contained the statement that, "Inducement may take different forms, such as persuasion, fraudulent representations, threats or other coercive tactics." Defendant argues that it was error for the court to refuse this request. He further complains that this amplification was necessary for the jury to fully consider the "creative activity" or "corruption" by the government officials in understanding the defense of entrapment. It is urged that the example used by the trial court amounted to a judicial finding of lack of "corruption" or "creative activity" thereby removing the jury as the trier of fact on the key issue. The government did not introduce any evidence of other transactions, his propensities or anything similar to warrant the example, according to defendant. Defendant finally urges that entrapment was established as a matter of law. We find these arguments to be without merit.

■■■ The entrapment instruction given is found in Devitt & Blackmar, Federal Jury Practice & Instructions § 13.13 at 290–91 (2d Ed.1970). The essential issue for the jury was whether the defendant was basically an innocent person in whose mind the government implanted some criminal design. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Although possibly its language might have been improved upon, we find no condemning impropriety or prejudice in the charge as given. Defendant's proffered instruction amplifying "inducement" was not essential to an understanding of the instruction. The defendant was at liberty to persuade the jury in oral argument of the corruptive means allegedly forming the government's inducement. The instruction need not adopt the defendant's closing argument. United States v. Long, 449 F.2d 288 (8 Cir. 1971). Whether defendant may be shown to have a predisposition to the crime is a circumstance dependent on all of the surrounding facts to the crime. Where the government denies any form of inducement, direct proof of predisposition is not necessary to rebut the defense of entrapment.[6] The government's position was that it merely afforded the defendant the opportunity to make a sale. Taylor v. United States, 390 F.2d 278 (8 Cir. 1968), cert. denied

"On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is not entrapment. For example, when the Government suspects that a person is engaged in the illicit sales of narcotics, it is not entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such suspected person.

"If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offenses involved in this case, the defendant was ready and willing to commit crimes such as charged in the Indictment, whenever opportunity was afforded, and that the Government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant is not a victim of entrapment.

"On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant had the previous intent or purpose to commit any offenses of the character here charged, and did so only because he was induced or persuaded by some officer or agent of the Government, then it is your duty to acquit him."

6. Cf. Hansford v. United States, 112 U.S. App.D.C. 359, 303 F.2d 219 (1962).

In United States v. Groessel, 440 F.2d 602 (5 Cir. 1971), the Fifth Circuit observed:

"[I]f the defendant introduces overwhelming evidence of entrapment, the burden of going forward shifts to the Government. If the Government then fails to carry the burden forward, the defendant, having established entrapment as a matter of law, is entitled to a judgment of acquittal.

\* \* \* \* \*

"However, while the entrapment evidence in the case sub judice sufficed to take the issue to the jury, it was not so overwhelming that it was 'patently clear' or 'obvious' that Groessel was entrapped as a matter of law."

393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137; Rowell v. United States, 368 F.2d 957 (8 Cir. 1966), cert. denied 386 U.S. 1009, 87 S.Ct. 1353, 18 L.Ed.2d 438 (1967). Once the jury believed the agents' testimony, the defense of entrapment had to fall. Kibby v. United States, 372 F.2d 598 (8 Cir. 1967), cert. denied 387 U.S. 931, 87 S.Ct. 2055, 18 L. Ed.2d 993; Rush v. United States, 370 F.2d 520 (8 Cir. 1967), cert. denied 387 U.S. 943, 87 S.Ct. 2073, 18 L.Ed.2d 1328; Cross v. United States, 347 F.2d 327 (8 Cir. 1965).

In the case of Henderson v. United States, 261 F.2d 909 (5 Cir. 1958), entrapment was established as a matter of law. The court stressed that it was "patently clear" on the evidence that the defendant was the victim of the government employee's activities. There the defendant was charged with violation of the narcotics laws in supplying drugs to a government employee. The employee had requested that the defendant obtain some narcotics for him and after some hesitancy, she agreed with the justification that he was a good friend of hers and she felt obligated to repay him for past favors. The court noted that the government employee gave defendant instructions on where to find the drugs along with the purchasing money in advance. There was positive, uncontradicted evidence that she made no profit on the transactions.

■ Here, defendant claims it took him some five or six months to locate the drugs sought by the government, and that he was initially skeptical of the government's reasons for its need for drugs, i. e., the threat of death. He claims he made no money on the two deliveries of heroin to the government agent, although this was disputed. Nevertheless, we see the facts in this case departing markedly from *Henderson*. The evidence shows Haley already had some drugs on hand when the agents arrived at his home. On a subsequent request he quickly located more drugs; he was not paid in advance for finding the drugs and upon completion of the first transaction, he left his telephone number with the agent in case the agent should want more narcotics in the future. These facts undermined defendant's contention that he should have been acquitted because the evidence overwhelmingly or obviously showed entrapment.

■ Defendant complains of the use of the example (see n. 5, supra) as removing the issue of entrapment from the jury. There exists no impropriety in a court amplifying a charge, once given accurately and correctly. United States v. Bayer, 331 U.S. 532, 536, 67 S. Ct. 1394, 91 L.Ed. 1654 (1947); Howard v. United States, 128 U.S.App.D.C. 336, 389 F.2d 287 (1967). We find no prejudicial error per se in the example.[7]

## IV. DOUBLE JEOPARDY

Defendant Haley was convicted in Minnesota for conspiring to violate § 4705(a). Trial was held in Minnesota after the return of the Iowa indictment on the substantive offenses but prior to the trial in Iowa. Defendant asserts the defense of double jeopardy by reason of his conviction in Minnesota, since, as he claims, the instant conviction arises from the same sales involved in the conspiracy charges in the Minnesota indictment. Defendant asserts the court is now confronted with the proposition of either accepting the "same evidence" test or the "same transaction" test in

---

7. In giving an example of entrapment the trial court premised the inducement on the subjective *suspicion* of the government agent. We think predisposition is better founded in terms of "reasonable grounds to believe." See Hansford v. United States, supra. A similar example is used by Judge Matthes in 27 F.R.D. 39, 84–85 (1961) where he states:

"When, for example, the Government has *reasonable grounds for believing* that a person is engaged in illicit sale of narcotics, it is not unlawful entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer or some other decoy, to purchase narcotics from such suspected person." (Emphasis ours.)

applying rules of double jeopardy. See, Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■ Defendant's argument is misplaced. A conspiracy count may be charged along with substantive offenses in the same indictment. Pereira v. United States, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954). Here the substantive offenses took place in Iowa and could not be joined in Minnesota with the conspiracy charge. Furthermore, the government points out, though the Minnesota conspiracy trial did include the Iowa transaction, the overall conspiracy involved in the Minnesota indictment was much broader. See United States v. Haley, et al., 452 F.2d 391 (8 Cir. 1971); McKee v. United States, 358 F.2d 737 (5 Cir. 1966). The defendant's argument that he is entitled to relief by reason of the principles of collateral estoppel misconstrues those principles. See, Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). No issue tried in the prior Minnesota conspiracy trial was determined in defendant's favor. Collateral estoppel is not applicable. See Sealfon v. United States, 332 U.S. 575, 578–579, 68 S.Ct. 237, 92 L.Ed. 180 (1948).

## V. PREJUDICIAL COMMENT

■ During the closing argument the prosecuting attorney urged: "The law is made by Senators and Congressmen of this country and we're charging him because he's guilty of those three offenses." The trial court overruled the defendant's motion for mistrial and then cautioned the jury, "You are admonished to disregard that statement that has been referred to by counsel." We cannot assess the prosecutor's remarks, particularly in view of the court's admonition, as having any influence on the verdict. Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L. Ed. 1557 (1946); United States v. Porter, supra, 441 F.2d at 1215. Assuming error, on the overall record presented

here the remark was harmless. Cf. Schmidt v. United States, 237 F.2d 542 (8 Cir. 1956); United States v. Medlin, 353 F.2d 789 (6 Cir. 1965), cert. denied 384 U.S. 973, 86 S.Ct. 1860, 16 L.Ed.2d 683 (1966).

We find the overall evidence sufficient to sustain the guilt of the defendant Haley. The various contentions on appeal do not justify a finding of prejudicial error warranting a judgment of acquittal or new trial.

Judgment affirmed.