**Griffith Francis BULLOCK, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 24225.

United States Court of Appeals
Fifth Circuit.

Oct. 17, 1967.

Joseph W. Popper, Jr., Macon, Ga., for appellant.

Sampson M. Culpepper, Manley F. Brown, Asst. U. S. Attys., Macon, Ga., for appellee.

Before TUTTLE, BELL and SIMPSON, Circuit Judges.

PER CURIAM:

Appellant was tried before a jury and convicted below under four counts charging violations of the Internal Revenue laws prohibiting possession and sale of non-tax paid distilled spirits, Title 26, U.S.C. Sections 5205(a) (2) and 5604 (a).[1] He received concurrent eighteen month confinement sentences. Before trial, the district court heard evidence upon and denied a motion to suppress the testimony of two informers on which the conviction is based.

On this appeal the sole specification of error is stated in appellant's brief as follows:

"Defendant specifies as error the refusal of the trial court to suppress the evidence and testimony of the two informers of the United States, one of whom was employed on a contingent-fee basis and promised a reward of an uncertain amount based upon a determination by the Government of the value of the services rendered and whose salary was not capable of being computed in advance by the undercover agent. In short, defendant objects to a promise of rewards dependent upon making cases in the future."

Appellant's argument is well summarized on brief as "The Question on Appeal", stated as follows:

"Will this Court allow Federal officers an absolutely free rein in the use of informants? If not, was the system utilized by the Government in the instant case repugnant to the orderly administration of justice?"

---

1. Counts One and Three charged possession of separate quantities of spirits on July 20 and July 24, 1966, respectively. Counts Two and Four charged sales on the same dates.

One of the informers who made the government case was a former liquor law violator who testified that he was paid $10.00 per day, with the promise that he would receive an undisclosed additional amount depending upon the success of his efforts. He was paid an additional $400 before trial.

The other informer who worked with and accompanied this employee throughout his activities of contacting appellant and arranging for the two separate purchases on July 20 and July 24, was paid a straight $10.00 per day expense money. He was a police officer of five years experience from a nearby town local police force, of unblemished record and reputation.

We are asked to apply the rationale and holding of our case of Williamson v. United States, 5 Cir. 1962, 311 F.2d 441, to the facts here and reverse the conviction on grounds of public policy. We decline and affirm.

Briefly, the informer in *Williamson* was promised $10.00 per day subsistence and a reward of $200.00 to "get Big Boy" (Williamson). Here, the two informers were sent to contact an entirely separate suspected moonshine operator, who suggested that appellant might supply their needs. Bullock had a reputation among law enforcement officers as a liquor law violator.[2] After the first buy, on July 20, the two informers were sent specifically to make the July 24 purchase from Bullock. Alcohol and Tobacco Tax Agent Bryant, in charge of the investigation, testified that he explained the law of entrapment to the two informers, warning them "they could legally afford someone the opportunity to violate the law, but that they could not encourage or entice them (to break the law)."

The crux of the *Williamson* holding is set forth at page 444 of 311 F.2d in this language:

"[W]e cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed. Such an arrangement might tend to 'frame up,' or to cause an informer to induce or persuade innocent persons to commit crimes which they had no previous intent or purpose to commit. The opportunities for abuse are too obvious to require elaboration."

We realize that in their zeal law enforcement officers come close to and sometimes cross the outer limits of permissible activity as fixed by *Williamson*. We remain unpersuaded, however, that the line was crossed here. Bullock was not singled out in advance as a possible violator to be approached for a buy. Not until one buy had been made from Bullock on July 20 were the undercover agents sent to make another buy from Bullock on July 24. The law of entrapment was carefully gone into in advance by Mr. Bryant. Finally, the second informer was an experienced law enforcement officer, whose motives were not impeached, and who was able to corroborate in detail the testimony of the first informer whose motives and methods might otherwise have been suspect.

Affirmed.

---

2. See Hill v. United States, 5 Cir., 1964, 328 F.2d 988.